UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

SERVICE GUARANTEE AND SURETY COMPANY
a/k/a THE SERVICE INSURANCE COMPANY, INC.
a foreign corporation,

      Plaintiff,

v.

HENSEL PHELPS CONSTRUCTION CO.,
a foreign corporation,

      Defendant.
_____/

**COMPRAINT FOR DECLARATORY RELIEF**
**AND RESCISSION**

Plaintiff, SERVICE GUARANTEE AND SURETY COMPANY a/k/a THE SERVICE INSURANCE COMPANY, INC., hereby sue the Defendant, HENSEL PHELPS CONSTRUCTION CO., and allege as follows:

**I.   JURISDICTION AND VENUE**

1.    This is an action for judgment and supplemental relief under 28 U.S.C. §§220l and 2202.

2.    Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3.    Plaintiff, SERVICE GUARANTEE AND SURETY COMPANY a/k/a THE SERVICE INSURANCE COMPANY, INC. ("TSIC"), is a corporation organized and existing under the laws of the State of New Jersey, whose principal place of business is located in West

CASE NO.: _____

Orange, New Jersey, and who is duly registered and authorized to do business in the State of Florida, and thus is a citizen of the State of New Jersey.

4. Defendant, HENSEL PHELPS CONSTRUCTION CO. ("HPC") is a corporation organized and existing under the laws of the State of Delaware, whose principal place of business is located in Greeley, Colorado, and thus is a citizen of the States of Delaware and Colorado.

5. The amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

6. Venue is proper in this Court because the contract at issue in this case was to be performed in Miami, Miami-Dade County, Florida.

7. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

8. On or about October 11, 2017, HPC, as general contractor, and Inclan Painting & Waterproofing Corp. d/b/a Inclan Construction ("Inclan Painting"), as subcontractor, entered into a written subcontract (the "*Subcontract*") to perform certain painting and wallcovering work at the project commonly known as the "Baptist Health Hilton Hotel & Conference Center" (the "Baptist Health Project"). A true and correct copy of the *Subcontract* is attached hereto and made a part hereof as **Exhibit "A"**.

9. In or about early 2018, Inclan Painting made request upon TSIC for the issuance of performance and payment bonds associated with the *Subcontract*. Accordingly, TSIC issued a formal request upon HPC for a written report on the status of Inclan Painting's performance.

10. On or about April 10, 2018, TSIC received a *Job Status Report* prepared by HPC and executed Matthew Wilson as HPC's Project Manager. By the *Job Status Report*, HPC represented to TSIC that Inclan Painting was "working on schedule" and that no "complaints" had been rendered against Inclan Painting due to its performance. A true and correct copy of the *Job Status Report* dated April 10, 2018 is attached hereto and made a part hereof as **Exhibit "B"**.

11. In addition to completion of the *Job Status Report*, TSIC communicated further with HPC concerning Inclan Painting's ongoing performance, specifically including but not limited to an exchange of e-mail communications dated May 3, 2018. In such e-mail communications, HPC (by and through Matthew Wilson) confirmed that Inclan Painting had performed certain work to date, including but not limited to the completion of the contractually-required "mock ups":

> Q. Has Inclan completed any work?
>
> A. ***They have <u>painted the two mock up rooms</u>, primed a couple electrical rooms and coated some door frames***. (Emphasis added)

A true and correct copy of the e-mail communications dated May 3, 2018 are attached hereto and made a part hereof as Composite **Exhibit "C"**.

12. As a direct and proximate result of the representations made by HPC in the *Job Status Report*, on May 22, 2018, TSIC issued a separate *Performance Bond* and *Payment Bond*. each bearing no. 1011FL (the "*Bonds*") on behalf of Inclan Painting, as principal, and in favor of the HPC, as obligee, having a penal sum in the amount of $345,838.00 for the Project. True and correct copy of the *Bonds* are attached hereto and made a part hereof as Composite **Exhibit "D"**.

CASE NO.: _____

13. In May 2018, prior to TSIC's issuance of the *Bonds,* HPC had the opportunity to provide TSIC with information and documentation concerning Inclan Painting's alleged non-performance under the *Subcontract* but failed to do so.

14. In or about November 2018, issues arose between HPC and Inclan Painting concerning performance of the *Subcontract*. As a result, HPC issued a *Notice of Default* to Inclan Painting dated November 12, 2018, and Inclan Painting issued its response dated November 13, 2018, refuting HPC's allegations of default. A true and correct copy of Inclan Painting's letter dated November 13, 2018 is attached hereto and made a part hereof as **Exhibit "E"**.

15. Following the exchange of such communications, on or about November 16, 2018, HPC reached out to TSIC to open discussions concerning the alleged performance issues between HPC and Inclan Painting.

16. TSIC attended and video-taped a site inspection at the Project on December 4, 2018, at which time HPC's representatives provided recorded information concerning Inclan Painting's alleged non-performance under the *Subcontract*. Of specific note, during such discussions HPC specifically acknowledged that issues with Inclan Painting's work on the Project were "first noticed around May" when HPC had to "bring in another painter" to paint the contractually-required mock-ups because Inclan Painting never completed such work.

17. HPC's statements at the Project meeting of December 4, 2018 directly contradict the previous representations made by HPC in the *Job Status Report* and e-mail communications dated May 3, 2018 in which HPC acknowledged that Inclan Painting had performed completed the contractually-required mock ups.

18. On December 5, 2018, HPC issued its purported *Notice of Default and Termination* to Inclan Painting, alleging Inclan Painting's "repeated failure to provide sufficient

manpower to the project," along with alleged "quality issues" with Inclan Painting's performance. As part of such *Notice*, HPC purported to provide "formal notification" to TSIC that it was making claim under the *Performance Bond*. A true and correct copy of the *Notice of Default and Termination* dated December 5, 2018 is attached hereto and made a part hereof as **Exhibit "F"**.

19. As a result of TSIC's receipt of HPC's correspondence dated December 5, 2018 – and contrary to HPC's most recent unsubstantiated claims that TSIC "failed to undertake any investigation" – TSIC communicated with various persons and entities, including Inclan Painting, in an effort to evaluate HPC's claims.

20. As part of TSIC's investigation, it scheduled a second job site inspection/meeting for December 11, 2018 to review HPC's claim.

21. Upon further review of the *Job Status Report*, e-mail communications dated May 3, 2018, and videos taken during the original site inspection on December 4, 2018, it became apparent to TSIC that HPC had significantly misrepresented the status of Inclan Painting's performance on the Project prior to TSIC's issuance of the *Bonds*, specifically including but not limited to HPC's misrepresentations that the mock-ups had been provided by Inclan Painting and met the quality standards required of the *Subcontract*.

22. It became evident to TSIC that even before the *Bond* was issued, HPC was aware that Inclan Painting had failed to perform the basic qualifying standards to proceed (*to wit*: to provide a mock-up of the work to be performed). As a result of such conclusion, TSIC canceled the proposed second inspection/meeting.

23. On or about February 19, 2019, HPC issued its correspondence to TSIC, purporting to declare TSIC in breach of its obligations under its *Performance Bond* and making

CASE NO.: _____

demand upon TSIC for performance. A true and correct copy of HPC's correspondence dated February 19, 2019 is attached hereto and made a part hereof as **Exhibit "G"**.

24. On or about February 22, 2019, TSIC responded to HPC's demand and denied HPC's claim under the *Performance Bond*, specifically stating that:

> Here, there can be no dispute that, prior to its issuance of the *Bonds*, TSIC requested a status update on Inclan's performance from HPC and that HPC responded – by the *Job Status Report* and e-mail communications dated May 3, 2018 – providing fraudulently inaccurate misrepresentations that Inclan had provided the mock-ups which met the quality standards required of the *Subcontract*. Moreover, it is beyond dispute that from HPC had the opportunity in May 2018, prior to TSIC's issuance of the *Bond,* to provide TSIC with information and documentation concerning Inclan's alleged non-performance under the *Subcontract,* but failed to do so, In the absence of such fraudulent misrepresentations by HPC, TSIC would never have issued the *Bonds*. As such, Florida law provides that the *Bonds* be rendered null and void as a result of HPC's fraudulent

A true and correct copy of TSIC's correspondence dated February 22, 2019 is attached hereto and made a part hereof as **Exhibit "H"**.

## COUNT I – DECLARATORY RELIEF

25. TSIC re-alleges and re-avers the allegations of paragraphs 1 through 24 of the instant *Complaint* as if fully set forth herein.

26. There is a bona fide present controversy between the parties covering the rights and obligations of TSIC under the *Performance Bond*.

27. HPC made a false statement(s) concerning a material fact – *to wit*: HPC significant misrepresented the status of Inclan Painting's performance on the Project prior to TSIC's issuance of the *Bonds*, including but not limited to HPC's misrepresentations that the mock-ups had been provided by Inclan Painting and met the quality standards required of the *Subcontract*.

- 6 -

28. At the time of making the misrepresentation(s), HPC either knew or should have known such statement(s) to be false.

29. At the time of making the misrepresentation(s), HPC intended that TSIC rely upon such false statement(s) and either knew or should have known that such statement(s) would induce TSIC to issue the subject *Bonds*.

30. TSIC relied upon HPC's misrepresentation(s) in issuing the subject *Bonds*.

31. TSIC seeks a declaration that HPC has fraudulently induced TSIC to issue the subject *Bonds* and, thus, TSIC is entitled to the rescission thereof and has no obligations thereunder.

32. TSIC has retained the undersigned counsel to represent its interests in the instant action and is required to pay a reasonable fee for such services. Pursuant to Paragraph 6 of the *Performance Bond* and the application of the reciprocal nature of Section 57.105, *Fla.Stat.*, TSIC is entitled to recover from HPC its prevailing party attorneys' fees and costs incurred in the prosecution of this action.

WHEREFORE, Plaintiff TSIC respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant HPC: (a) finding that HPC fraudulently induced TSIC into issuing the subject *Bonds*; (b) declaring that HPC's claim against the *Performance Bond* is barred and that TSIC has no obligations to HPC thereunder; (c) awarding TSIC its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and (d) awarding TSIC such other and further relief as this court deems necessary, just and proper under the circumstances.

CASE NO.: _____

## COUNT II – FRAUD IN THE INDUCEMENT
## (RESCISSION)

33. TSIC re-alleges and re-avers the allegations of paragraphs 1 through 24 of the instant *Complaint* as if fully set forth herein.

34. In inducement of HPC's efforts to obtain bonding from TSIC, as surety, on behalf of Inlan Painting, as principal, HPC made a false statement(s) concerning a material fact – *to wit*: HPC significant misrepresented the status of Inclan Painting's performance on the Project prior to TSIC's issuance of the *Bonds*, including but not limited to HPC's misrepresentations that the mock-ups had been provided by Inclan Painting and met the quality standards required of the *Subcontract*.

35. At the time of making the misrepresentation(s), HPC either knew or should have known such statement(s) to be false.

36. At the time of making the misrepresentation(s), HPC intended that TSIC rely upon such false statement(s) and either knew or should have known that such statement(s) would induce TSIC to issue the subject *Bonds*.

37. TSIC relied upon HPC's misrepresentation(s) in issuing the subject *Bonds*.

38. TSIC seeks a declaration that HPC has fraudulently induced TSIC to issue the subject *Bonds* and, thus, TSIC is entitled to the rescission thereof and has no obligations thereunder.

39. TSIC has retained the undersigned counsel to represent its interests in the instant action and is required to pay a reasonable fee for such services. Pursuant to Paragraph 6 of the *Performance Bond* and the application of the reciprocal nature of Section 57.105, *Fla.Stat.*, TSIC is entitled to recover from HPC its prevailing party attorneys' fees and costs incurred in the prosecution of this action.

WHEREFORE, Plaintiff TSIC respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant HPC: (a) finding that HPC fraudulently induced TSIC into issuing the subject *Bonds*; (b) declaring that TSIC is entitled to rescission of the *Bonds* rendering them null, void and of no further force and effect; (c) awarding TSIC its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and (d) awarding TSIC such other and further relief as this court deems necessary, just and proper under the circumstances.

## COUNT III – STATUTORY FRAUD
## (RESCISSION)

40. TSIC re-alleges and re-avers the allegations of paragraphs 1 through 24 of the instant *Complaint* as if fully set forth herein.

41. Section 627.409, *Fla.Stat.*, entitled "Representations in applications; warranties" establishes that an insurance company may avoid its obligations under a policy whenever the holder of the policy makes material misrepresentations in acquiring the policy:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty. Except as provided in subsection (3), a ***misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply***:
>
> (a) ***The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer***.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, ***the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard*** resulting in the loss. (Emphasis added)

42. In inducement of HPC's efforts to obtain bonding from TSIC, as surety, on behalf of Inlan Painting, as principal, HPC made a false statement(s) concerning a material fact – *to wit*: HPC significant misrepresented the status of Inclan Painting's performance on the Project prior to TSIC's issuance of the *Bonds*, including but not limited to HPC's misrepresentations that the mock-ups had been provided by Inclan Painting and met the quality standards required of the *Subcontract*.

43. The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

44. If the true facts had been known, TSIC in good-faith would not have: (a) issued the *Bond*; (b) issued it at the same premium rate; (c) issued the *Bond* in as large an amount; or (d) provided coverage with respect to the hazard resulting in the loss.

45. TSIC seeks a declaration that pursuant to Section 627.409, *Fla.Stat.*, TSIC is entitled to the rescission of the *Bond* and has no obligations thereunder.

46. TSIC has retained the undersigned counsel to represent its interests in the instant action and is required to pay a reasonable fee for such services. Pursuant to Paragraph 6 of the *Performance Bond* and the application of the reciprocal nature of Section 57.105, *Fla.Stat.*, TSIC is entitled to recover from HPC its prevailing party attorneys' fees and costs incurred in the prosecution of this action.

WHEREFORE, Plaintiff TSIC respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant HPC: (a) finding that pursuant to Section 627.409, *Fla.Stat.*, TSIC is entitled to rescission of the *Bonds* rendering them null, void and of no further force and effect; (b) awarding TSIC its attorneys' fees and costs incurred in connection with the

CASE NO.: _____

prosecution of the instant action; and (c) awarding TSIC such other and further relief as this court deems necessary, just and proper under the circumstances.

**DATED** this **9th** day of April 2019.

        **ETCHEVERRY HARRISON LLP**
        Attorneys for TSIC
        150 South Pine Island Road, Suite 105
        Ft. Lauderdale, FL 33324
        Phone: (954) 370-1681
        Fax: (954) 370-1682
        etcheverry@etchlaw.com
        geller@etchlaw.com
        service@etchlaw.com

        By: ___/s/ Edward Etcheverry___
            Edward Etcheverry, Fla. Bar No.: 856517
            Jeffrey S. Geller, Fla. Bar No.: 63721